IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VERSATA SOFTWARE, INC., *f/k/a* TRILOGY SOFTWARE, INC.; and VERSATA DEVELOPMENT GROUP, INC., *f/k/a* TRILOGY DEVELOPMENT GROUP, INC.<br><br>    Plaintiffs,<br><br>v.<br><br>INTERNET BRANDS, INC., *f/k/a* CARSDIRECT.COM, INC., AUTODATA SOLUTIONS COMPANY, and AUTODATA SOLUTIONS, INC.<br><br>    Defendants. | § § § § § § § § § § § § § § § § § | CIVIL ACTION No. 2:08-cv-313-WCB |

**MEMORANDUM AND ORDER**

This is a claim construction ruling in a patent infringement case. The parties disagree about the construction of four terms that are used in the two patents in suit, U.S. Patent Nos. 7,130,821 ("the '821 patent") and 7,206,756 ("the '756 patent"). The parties have provided the Court with briefing in the form of the plaintiffs' opening claim construction brief (Dkt. No. 118), the defendants' responsive claim construction brief (Dkt. No. 121), and the plaintiffs' claim construction reply brief (Dkt. No. 130). The Court has also had the benefit of the argument of counsel at a claim construction hearing held on December 19, 2011. The Court construes the four disputed terms as indicated below.

I. "Automatically Generate"

The first term about which the parties disagree is the term "automatically generate" (or "automatically generated"), which appears in all of the asserted claims of the '821 patent.

The abstract of the '821 patent describes the patented invention as a "method of comparing products" that includes "selecting a first configuration representing a first product with a first attribute, selecting a second configuration representing a second product with a second attribute, and displaying the first attribute and the second attribute," with the first attribute being defined in the first configuration and the second attribute being defined in the second configuration. The asserted claims of the '821 patent include claims to a method (independent claim 1 and its dependent claims 2, and 8), claims to a computer system (independent claim 10 and its dependent claims 11 and 17), and claims to a computer program product (independent claim 19 and its dependent claims 20 and 26).

Claim 1 is representative. It reads as follows:

> 1. A method of comparing products wherein at least one of the products is automatically generated, the method comprising:
>
> receiving data from a first computer system, wherein the received data includes product configuration data;
>
> processing the received data with a second computer system to generate a first product configuration;
>
> providing data to the first computer system to allow the first computer system to display the first product configuration;
>
> receiving an auto-generate request, separate from the received data, from the first computer system to automatically generate a second product configuration that is comparable to the first product configuration, wherein the auto-generate request includes data representing criteria to

>establish a basis for comparability between the first product configuration and the second product configuration;
>
>processing the auto-generate request with the second computer system to automatically generate the second product configuration in accordance with the criteria to establish a basis for comparability between the first product configuration and the second product configuration; and
>
>providing data to the first computer system to allow the first computer system to display the first and second product configurations and allow comparison of features of the first and second product configurations.

The specification of the '821 patent describes the claimed invention by reference to a method and system for comparing products with respect to their configurations and features. The specification first describes a computer-based system for comparing products by selecting both a "first configuration," i.e., a first product with a first attribute, and a "second configuration," i.e. a second product with a second attribute. The system displays the two attributes "so that the potential buyer can easily compare the two products' features." '821 patent, col. 5, ll. 50-56.

The specification then describes the operation of the system to compare product-related information for two automobiles. '821 patent, col. 9, line 66, through col. 10, line 60. It provides an example under which the user can select the make, model, and trim for two automobiles that the user wishes to compare. In the example given in the specification, the product information regarding the two automobiles is arranged to facilitate comparison of the respective features of the designated automobiles. Id. at col. 10, ll. 42-54. In addition, the example allows the user to vary the product-related information being compared by selecting a different make, model, and trim for either of the two displayed automobiles. Id. at col. 10, ll. 55-60.

3

In the passage most pertinent to the disputed claim construction issues before the Court, the specification states that the user can cause the server "to automatically generate information concerning an automobile that is comparable to that for which information is displayed [in the location where product-related information for the first automobile is recited]." '821 patent, col. 10, ll. 62-67. To initiate that mode of operation, the user selects "a criteria [sic] by which to seek a comparable automobile. The criteria can include, for example, price and/or features." Id., col. 10, line 67, through col. 11, line 3.

A later portion of the specification describes in detail the method of comparing products "wherein at least one of the products is automatically generated." '821 patent, col. 12, ll. 35-65. In the case of "automatic generation," the specification explains, "data is received from a first computer system [such as the user's computer], wherein the received data includes product configuration data [such as the make, model, and trim of an automobile]." Id. at col. 12, ll. 42-44. The data is then "processed with a second computer system to generate a first product configuration." Id. at col. 12, ll. 45-46. That data is then "provided to the first computer system to allow the first computer system to display the first product configuration." Id. at col. 12, ll. 47-49. "[A]n auto-generate request, separate from the received data is received from the . . . first computer system to automatically generate a second product configuration that is comparable to the first product configuration." Id. at col. 12, ll. 49-53. The auto-generate request includes data "representing criteria to establish a basis for comparability between the first product configuration and the second product configuration." Id. at col. 12, ll. 53-56. The auto-generate request is then processed by the second computer system "to automatically

4

generate the second product configuration in accordance with the criteria to establish a basis for comparability between the first product configuration and the second product configuration." Id. at col. 12, ll. 56-61. Data is then "provided to the first computer system to allow the first computer system to display the first and second product configurations and allow comparison of features of the first and second product configurations." Id. at col. 12, ll. 62-65.

In plain English, that passage means that the user sends the system information about the configuration of a product such as an automobile; the system identifies a product having that configuration and provides that configuration for display on the user's computer; the user then requests that the system generate a second product configuration based on a user-supplied criterion or criteria for comparison, such as another automobile comparable to the first in price and/or in designated features; the system then generates the second configuration and makes the two configurations available for display on the user's computer in a way that enables the user to compare them.

The plaintiffs argue that the proper construction of the claim term "automatically generate," as used in the phrase "automatically generate a second product configuration" is "causing a server to automatically generate a second product configuration wherein the user has selected none of the product-related information for the second product." The defendants argue that the term should be construed to mean "causing a server to generate or vary product information" for a second product. Neither proposed construction fully accords with the manner in which the term "automatically generate" is used in the specification or the claims.

5

The defendants' proposed construction is too broad, because it would apply to any process in which the user causes the second computer system to generate product-related information for the second product, even if the user designates all of the parameters of the second product. Such a process would not constitute "automatic generation" of the second product configuration, as that term is used in the patent. The key element in the "automatic generation" mode, as described in the specification, is that the computer system does not rely on the user to specify both of the configurations that are to be compared (in the example, the make, model, and trim of both automobiles). Rather, the system independently selects a product configuration for the user to compare with the first product configuration that the user has already selected.

The plaintiffs' proposed construction, by contrast, is too narrow. According to the plaintiffs, in the "automatic generation" mode the user does not select any of the "product-related information for the automatically generated [second] product configuration." While the plaintiffs' use of the term "product-related information" is a possible source of confusion, what is clear from both the claim language and the specification is that when the user of the system initiates the automatic generation function by initiating an "auto-generate request," the user provides data (referred to as "criteria to establish a basis for comparability") that enables the system to automatically generate a second product configuration that is comparable to the first product configuration. The claim language embodies that concept by providing (1) that the auto-generate request "includes data representing criteria to establish a basis for comparability between the first product configuration and the second product configuration," '821 patent, col. 13, ll. 26-29, and (2) that the second product configuration is generated "in

accordance with" those criteria, id. at col. 13, ll.32-34.  The specification uses similar language to describe the function of the data referred to as the "criteria to establish a basis for comparability" between the two product configurations, noting that the second product configuration is "generated in accordance with" those criteria.  Id. at col. 12, ll. 54-61. The specification further provides that to effect the automatic generation of a second product configuration in the case of the automotive example, the system user selects "a criteria [sic] by which to seek a comparable automobile."  Id. at col. 10, line 62, through col. 11, line 2.  It is therefore incorrect (or at least confusing) to say, as the plaintiffs argue, that in the automatic generation mode the user does not select any product-related information for use in generating the second product configuration, that "allowing a user to provide product-related information would read the word 'automatic' out of the construction of" the claims (Versata's Opening Claim Construction Br. at 10), and that "comparison criteria are not product-related information that results in a product configuration" (id. at 11).

    A second, more minor, objection to the plaintiffs' proposed claim construction is that it is limited to server-based systems.  The claim language is not so limited. Moreover, while one of the descriptions of the automatic generation mode in the specification makes reference to a server, see '821 patent, col. 10, line 63, the other description does not, but instead refers more generally to a "second computer system," id. at col. 12, ll. 57-58.  Because the former appears to refer to an embodiment rather than the invention as a whole, the Court will use the broader term in its construction.

    In light of the above analysis of the portions the claims and the specification of the '821 patent, the Court construes the claim limitation "automatically generate a second

product configuration" to require that the computer system generate the second product configuration in response to a request from the user and in accordance with comparison criteria provided by the user.

## II. "Comparison Criteria" and "Criteria Upon Which To Automatically Generate"

Although the parties disagree about the proper interpretation of the terms "comparison criteria" and "criteria upon which to automatically generate," the dispute on that issue focuses on the use of the term "automatically generated" in connection with the use of those terms. The dispute over those terms therefore largely overlaps with the dispute over the meaning of the term "automatically generate" discussed above.

The plaintiffs argue that the terms "comparison criteria" and "criteria upon which to automatically generate" mean "data used to cause a server to automatically generate a second product configuration wherein the user has selected none of the product-related information for the automatically generated product and where the product-related information for the automatically generated product is comparable to product-related information for a first product." The defendants argue that the terms mean "data used to cause a server to generate or vary product-related information for a second product, where the product-related information for the second product is comparable to product-related information for a first product."

Consistent with the Court's analysis above, the Court construes the term "comparison criteria" or "criteria" to refer to the product-related information provided by the user that the computer system uses to generate the second product configuration and to facilitate comparisons between the first and second product configurations. The plaintiffs' contention that the user may not have selected any "product-related

8

information" for the automatically generated product is, at minimum, confusing in light of the clear indication in the '821 patent that the user supplies the criteria that form the basis for the generation of the second product configuration.

The specification states that in the "auto-generate" mode, the user "select[s] criteria by which to seek a comparable automobile." '821 patent, col. 11, ll. 1-2. The system uses that data provided by the user, which represents "criteria to establish a basis for comparability" between the first and second configurations, "to automatically generate a second product configuration that is comparable to the first product configuration." Id. at col. 12, ll. 51-56.

The claim language is to the same effect. As noted, it provides that the second product configuration generated by the system "is comparable to the first product configuration," and that the user's auto-generate request "includes data representing criteria to establish a basis for comparability" between the two product configurations. '821 patent, col. 13, ll. 23-28. Thus, the system generates the second product configuration "in accordance with the criteria [chosen by the user] to establish a basis for comparability between the first product configuration and the second product configuration." Id. at col. 13, ll. 31-35. Based on the specification and the claim language, the Court concludes that in the "automatic generation" mode, the second computer system generates a second product configuration that is comparable to the first product configuration, and it does so in accordance with criteria supplied in the auto-generate request that establish the basis for comparing the first and second product configurations.

The plaintiffs argue that the comparison criteria "are not used directly as product information data for the second product configuration," but instead are simply "metrics for generating a second product configuration from a first product configuration." (Plaintiffs' Claim Construction Reply Br. at 6). Putting the same point somewhat differently, the plaintiffs argue that a "product configuration is 'automatically generated' if it is created based on comparison criteria and not based on product configuration data or product-related information provided by the user" (Versata's Opening Claim Construction Br. at 12).

The Court finds the plaintiffs' argument unpersuasive. The plaintiffs acknowledge that a product configuration can be "automatically generated" even if it is based on comparison criteria, but they insist that the term "comparison criteria" does not encompass product-related information. The problem with the plaintiffs' argument is that the claims require the system to automatically generate a second product configuration "that is comparable to the first product configuration" and to do so "in accordance with the [comparison] criteria to establish a basis for comparability." '821 patent at col. 13, ll. 23-32. To generate a second product that is "comparable to" the first product, the system must know what criterion of comparability is to be used and must have information about the first product vis-à-vis that criterion. Thus, to use the automotive example, if the system is asked to automatically generate a second vehicle that is comparable to the first vehicle and the system is advised that the comparison criterion is price, the system must have information about the price of the first vehicle in order to generate a vehicle that is "comparable" to the first vehicle with respect to price.

To that extent, the claimed method and system employ "product-related information," as that term is ordinarily understood, even in the automatic generation mode.

### III. "Associated With An Identification Code Corresponding to Said User"

The third and fourth of the four disputed claim terms relate to the second patent at issue in this case, the '756 patent.

The '756 patent is entitled, "System and Method for Facilitating Commercial Transactions Over a Data Network." The abstract explains that the claimed method, computer system, and computer program products are designed to facilitate comparison price shopping over a network such as the Internet, and that the information regarding a product that is stored on a server includes the offered price data for the product. The three asserted claims of the '756 patent are similar, except that they relate, respectively, to a method (claim 1), a computer system (claim 10), and a computer program storage means (claim 19). Claim 1, which is representative, reads as follows:

> 1. A method, employing a browser in data communication over a network with a server, for determining a price of a product, said method comprising:
>
> providing information concerning said product for display in a browser window, said information including a first offered price of said product;
>
> receiving information from said browser indicating an agreement by a user of the browser of said first offered price for said product;
>
> storing product related information including said first offered price, wherein said product is configured with multiple features, said stored product related information includes said features of said product and said stored product related information is associated with an identification code corresponding to said user of the browser;
>
> receiving a purchase request associated with said identification code, wherein the purchase request indicate an agreement to purchase said product for said first offered price;

11

>prior to responding to said purchase request, determining if an event has occurred prior to receiving said purchase request to cause modification of the first offered price, wherein the event that caused modification of the first offered price is unrelated to any data received from said user subsequent to storing said product related information; and
>
>changing said first offered price of said product to a second offered price of said product in response to said event that caused modification of the first offered price.

The plaintiffs urge that the phrase "associated with an identification code corresponding to said user," should be construed to mean "related to an identification code for said user." The defendants argue that the phrase should be construed to mean "stored in an address space of a server, where the address space is associated with a unique identifier, including a user-name and password, corresponding to said user." The Court concludes that the plaintiffs' construction is insufficiently specific to be of assistance to the finder of fact, while the defendants' construction is too restrictive.

The specification makes clear that the product-related information pertaining to a particular user is stored in the server and linked to the identification code corresponding to that user. Moreover, while the specification refers to the use of a user name and password—a frequent kind of identification code—the claim language does not mandate that the identification code consist of user name and password, but permits the use of some other type of identification code. Accordingly, the Court construes the phrase "associated with an identification code corresponding to said user" to mean stored in the server and linked to an identification code for the user, such as a user name and/or password.

## IV. "Changing Said First Offered Price of Said Product to a Second Offered Price of Said Product in Response to Said Event"

The parties disagree about the meaning of the last limitation of each of the asserted claims of the '756 patent. The defendants argue that the phrase "changing said first offered price of said product to a second offered price in response to said event" refers to the server "changing the price at which a product was offered to a different price in response to an event." The plaintiffs submit that the Court should simply adopt what the plaintiffs regard as the plain meaning of the phrase. In their argument, however, the plaintiffs have made clear that they regard "changing" the price to include updating the price even when the amount of the price is not altered by the "event" that caused the server to update the price.

The Court construes the phrase "changing said first offered price of said product to a second offered price in response to said event that caused modification of the first offered price" to refer to what is ordinarily understood to be a "change" in the first offered price, i.e., a modification of the price from a previous price to a different price, which occurs in response to an event that causes the price to be modified. Thus, a "change" in price refers to an alteration in the price from what it previously was.

The claim language virtually compels such an interpretation. Not only does the claim language refer to "changing" the price, which suggests an alteration from the previous price, but it adds that the change is made "in response to [an] event that caused modification of the first offered price." The use of the term "modification" reinforces the natural meaning of the limitation, as "modification" means a change or alteration from a previous state.

13

The specification supports that common-sense interpretation of the claim language, explaining that the stored price of the product "is maintained in the absence of a predefined system event" that could lead to the modification of the price. '756 patent, col. 12, ll. 10-21.  The specification adds that "changes in any of the information associated with the [stored] product-related information" can also "result in modification of the price stored at the server."  Id. at col. 12, ll. 21-25.  The specification describes a system in which the stored offered price is changed in response to an event that causes the offered price to be modified; if the event does not cause the offered price to be modified, i.e., changed to a different price, there is no "changing [of] said first offered price of said product to a second offered price of said product."

Although there were initially more terms in dispute in this case, the parties have narrowed their disagreements as to claim construction to the four terms addressed above. Because the remaining claim terms are no longer in dispute, the Court will not address any of those terms at this time.

SIGNED this 4th day of January, 2012.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

14