## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| VERSATA SOFTWARE, INC., *f/k/a* TRILOGY SOFTWARE, INC.; and VERSATA DEVELOPMENT GROUP, INC., *f/k/a* TRILOGY DEVELOPMENT GROUP, INC. §§§§§ | |
| Plaintiffs, § | CIVIL ACTION No. 2:08-cv-313-WCB |
| v. § | |
| INTERNET BRANDS, INC., *f/k/a* CARSDIRECT.COM, INC., AUTODATA SOLUTIONS COMPANY, and AUTODATA SOLUTIONS, INC. §§§§ | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Before the Court are several pretrial motions, two filed by the plaintiffs and one by the defendants.  After reviewing the parties' submissions and hearing counsels' argument at a hearing on December 19, 2011, the Court disposes of these motions as follows:

(1)   The Plaintiffs' Motion to Dismiss Defendants' Affirmative Defense and Counter Claim of Inequitable Conduct (Dkt. No. 122):  the Court DENIES that motion.

(2) The Plaintiffs' Motion for Leave to Amend Complaint (Dkt. No. 133): the Court GRANTS that motion.

(3) The Defendants' Motion for Partial Reconsideration of Order on Plaintiffs' Motion to Compel and Defendants' Motion for Protective Order (Dkt. No. 168): The Court DENIES that motion.

The remaining outstanding motion in this case, the Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 151), will be addressed in a separate order.

## I.   Plaintiffs' Motion to Dismiss Defendants' Affirmative Defense and Counter Claim of Inequitable Conduct.

In their fourth amended answer and counterclaim, the defendants have raised inequitable conduct, both as an affirmative defense to the plaintiffs' infringement claims and as a separate counterclaim.  The plaintiffs have moved to dismiss both the affirmative defense and the counterclaim of inequitable conduct, contending that the allegations of inequitable conduct are insufficiently specific to satisfy the pleading requirements set forth by the Federal Circuit in Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312 (Fed. Cir. 2009).  After careful analysis of the defendants' allegations, the Court is persuaded that the defendants' allegations are sufficient to withstand a motion to dismiss. The Court therefore DENIES the plaintiffs' motion.

 The Federal Circuit's decision in Exergen stands for the proposition that an allegation of inequitable conduct, like an allegation of fraud, is subject to the enhanced pleadings standards of Rule 9(b) of the Federal Rules of Civil Procedure.   Under Exergen, "a pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)."  575 F.3d at 1326-27.  The court added that, "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  Id. at 1327.  With respect to the elements of knowledge and intent, the court stated that those elements may be averred generally, but the pleading "must include sufficient allegations

of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to defraud the PTO." Id. at 1328-29.

Even measured against that exacting standard, the defendants' allegations are sufficient to survive a motion to dismiss.  Although bulk alone is not sufficient to save otherwise insufficient pleadings, the defendants' factual allegations on the issue of inequitable conduct run to six and a half pages of their answer and counterclaim, and the allegations set forth the elements of the defendants' inequitable conduct claim in considerable detail.  In their opposition to the motion to dismiss, the defendants state that they are asserting their inequitable conduct claim only with respect to the two principal patents in suit in this case, U.S. Pat. Nos. 7,130,821 ("the '821 patent) and 7,206,756 ("the '756 patent"); they are not alleging inequitable conduct with respect to the other patents initially asserted by the plaintiffs, U.S. Pat. Nos. 5,825,651 ("the '651 patent"), 6,405,308 ("the '308 patent"), and 6,675,294 ("the '294 patent").  The plaintiffs have separately stated that they no longer assert infringement with respect to the '651, '308, and '294 patents.

The core of the defendants' allegations is their contention that, before the priority date for the two patents in suit, defendant Autodata provided the plaintiffs' predecessor company, Trilogy Software, Inc., with information regarding its technology as part of a confidential relationship between the two parties.  According to the defendants, Trilogy used that technology, without authorization and without revealing its source, to obtain the

patents in suit.   Autodata's technology, according to the defendants, constituted invalidating prior art with respect to all of the claims of the '821 and '756 patents.

The defendants' Answer and Counterclaim describes the events surrounding Trilogy's alleged acquisition and use of Autodata's technology in detail, including identifying the persons who had access to that technology and the circumstances under which that technology was revealed to Trilogy employees.   The defendants supported their assertion that the Autodata prior art was material to the prosecution of the '821 patent by alleging that the Patent and Trademark Office in reexamination proceedings, has held that all of the claims of that patent are anticipated by the Autodata technology. In addition, the defendants asserted that Trilogy representatives were aware of particular third-party technology that would have been material to the patentability of the '821 patent.

The defendants also allege that Trilogy's representatives failed to disclose that they had sold and offered for sale the same technology that is recited in the '821 patent more than a year before the earliest priority date for that patent.   In so doing, the defendants identified the particulars of the sales and offers, including the identities of persons involved in those activities and the documents reflecting the sales and offers for sale.   With respect to the '756 patent, the defendants alleged that the Trilogy representatives had offered for sale the vehicle price and quotation technology in that patent as early as 1998, and they identified the individual purportedly responsible for one such offer (the sole inventor of the '756 patent) as well as a document reflecting that offer.

The defendants further alleged that various named individuals with direct knowledge of the allegedly invalidating events "intentionally and/or deliberately failed to disclose" the invalidating  information to the PTO because they knew that if they had disclosed that information, "the PTO would have had no choice but to refuse to issue these patents to Plaintiffs or in the names of the named inventors."

In their motion to dismiss the inequitable conduct claim and to strike the affirmative defense of inequitable conduct, the plaintiffs assert that the defendants' allegations are insufficient to satisfy the Exergen standards in a variety of ways.  The Court has reviewed the plaintiffs' submission with care and concludes that the defendants' allegations are sufficient to survive the motion to dismiss.  With regard to the Autodata prior art and the alleged offers to sell, in particular, the defendants' allegations are quite specific.  Similarly, the defendants identify particular individuals by name who, they allege, deliberately concealed that information from the PTO with deceptive intent.  And while the PTO's initial decision to cancel the claims of the '821 patent is not conclusive on the issue, it certainly provides support for the defendants' assertion that at least the Autodata prior art was material to patentability.

The plaintiffs' challenges to the sufficiency of the defendants' pleadings are not persuasive.  For example, the plaintiffs contend that the defendants have not shown that the withheld information was material.  According to the plaintiffs, the defendants should have demonstrated that the withheld information was not cumulative.  Such a showing is unnecessary in a case such as this, in which the defendants have alleged that the withheld information anticipated the claimed inventions.  It is unlikely that anticipating prior art would ever be immaterial, even if the PTO had before it other information that cast doubt

on the patentability of the applicant's invention.  It would go beyond even the enhanced pleading requirements of Exergen to require a party to demonstrate, by analyzing each of the references before the examiner, that an allegedly anticipating reference was not cumulative.

Likewise, there is no force to the plaintiffs' argument that the defendants have failed to allege that each limitation of the claimed inventions was met by the asserted prior art.  In light of the definition of anticipation, the allegation that the prior art anticipated the inventions was sufficient to allege that each limitation of the claimed inventions was satisfied.

The plaintiffs also point to asserted inadequacies in the defendants' allegations regarding certain third-party websites, which the defendants allege should have been disclosed to the PTO.  While the allegations regarding the third-party websites are not as specific as other allegations in the defendants' pleading—they do not, for example, specifically allege that the third-party websites anticipate the plaintiffs' claims—the other allegations in the defendants' pleading are sufficient to withstand the motion to dismiss, and the Court concludes that the pleadings regarding the third-party websites contain sufficient averments that those websites would have been material to the filed claims.

Finally, the plaintiffs argue that the defendants' allegations as to the requisite knowledge and deceptive intent are insufficient to withstand the motion to dismiss.  As to knowledge and intent, the Federal Circuit in Exergen held that those elements could be "averred generally," as long as the pleadings "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." Exergen, 575 F.3d at 1327.  Taking the defendants' allegations as true, as the Court is

required to do at this juncture, the Court concludes that the defendants' allegations are sufficient to meet that standard.

In sum, the Court is persuaded that the defendants have adequately alleged the "who, what, when, where, and how" of the asserted inequitable conduct as to the '821 patent sufficiently to allow them to overcome the plaintiffs' Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted. While the allegations regarding the '756 patent are less comprehensive, they are sufficient, especially in light of the close relationship between the two patents. In particular, the defendants' allegations regarding the 1998 offer by the sole inventor of the '756 patent to sell software that would anticipate the '756 patent are sufficient to satisfy the defendants' pleading burden with respect to that patent. The motion to dismiss the inequitable conduct counterclaim and to strike the inequitable conduct defense to the infringement claims is therefore DENIED.

## II.  Plaintiffs' Motion for Leave to Amend Complaint

The plaintiffs seek leave to amend their complaint by adding two state law claims—a new claim for breach of contract and an additional claim of tortious interference with contract. Where the court has entered a scheduling order, as in this case, the court must determine as a preliminary matter whether "good cause" exists to permit an amendment to the complaint at a time after the period provided for in the scheduling order.  See  S&W Enters. v. Southtrust Bank of Ala., 315 F.3d 533, 535-36 (5th Cir. 2003).  If good cause is found, leave of court will be granted "freely" if "justice so requires."  Fed. R. Civ. P. 15(a)(2).  In this case, the Court is satisfied that both of

those requirements are met and therefore GRANTS the plaintiffs' motion for leave to amend.

The defendants focus mainly on the asserted futility of the amended claims as a basis for opposing the amendments. With respect to whether good cause has been shown for the delay in seeking to amend the complaint, the defendants assert that the motion to amend is based largely on testimony and exhibits from a deposition that occurred in April 2011, but that the plaintiffs waited until July 2011 to state their intention to move to amend the complaint. The plaintiffs argue that the three-month period of delay was attributable to an examination of voluminous records produced in discovery and assessment of the viability of the new claims. The Court is satisfied that the period of delay was not unreasonable under these circumstances.

With respect to the defendants' argument that the amendment would be futile because of the weakness of the new claims and that the motion to amend should be denied on that ground, the Court concludes that the new claims contain detailed allegations that are sufficient to state claims on which relief could be granted. Applying the legal standard for motions under Fed. R. Civ. P. 12(b)(6), as the Court is required to do, see Stripling v. Jordan Prod. Co., 234 F.3d 863, 872-73 (5th Cir. 2000), the Court will not look behind the pleadings to determine the factual viability of the asserted claims, as long as the new allegations are sufficient to state claims on which relief can be granted. The Court concludes that the new claims are sufficient to satisfy the Rule 12(b)(6) standard and that they contain detailed factual allegations, not barebones legal claims of the sort that have been deemed insufficient in other circumstances. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

The defendants make two arguments in support of their contention that the new claims are futile. With respect to the plaintiffs' allegation that Autodata reverse engineered Versata software, they first argue that there is no evidence that Autodata was ever in possession of software owned by Versata. Instead, they contend, the data that Autodata was investigating belonged to Chrysler, not Versata. Second, the defendants argue that the plaintiffs are relying on a contract that was superseded and has no application to the defendants' conduct. The applicable contract, they contend, has no prohibition against reverse engineering.

The questions as to whether Autodata reverse engineered software that belonged to Versata and whether the contract provisions governing reverse engineering applied to Autodata's conduct during the time it was working with Chrysler are sharply disputed between the parties. Those questions may be appropriate for resolution prior to trial through motions for summary judgment, but they are not suitable for resolution under the Rule 12(b)(6) standard, and because that standard applies to assessing "futility" in connection with a motion to amend a complaint, the Court declines the defendants' invitation to attempt to resolve those issues at this juncture. The motion for leave to amend the complaint is therefore GRANTED.

## III. Defendants' Motion for Partial Reconsideration of Order on Plaintiffs' Motion to Compel and Defendants' Motion for Protective Order

The defendants moved for reconsideration of an order granting plaintiffs' motion to compel discovery and for a protective order. The motion was predicated on the fact that the Court had not yet ruled on the plaintiffs' motion for leave to amend the

complaint.  Because the Court has now granted that motion, there is no remaining reason to grant the relief sought in the defendants' motion.  That motion is therefore DENIED.

SIGNED this 17th day of January, 2012.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE