**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., *f/k/a* | § | |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, INC., | § | |
| *f/k/a* TRILOGY DEVELOPMENT GROUP, | § | |
| INC. | § | |
| | § | CIVIL ACTION No. 2:08-cv-313-WCB |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| INTERNET BRANDS, INC., *f/k/a* | § | |
| CARSDIRECT.COM, INC., | § | |
| AUTODATA SOLUTIONS COMPANY, | § | |
| and AUTODATA SOLUTIONS, INC. | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND ORDER**</u>

Before the Court is the plaintiffs' Motion for Partial Summary Judgment on the

defendants' state law counterclaims.  (Dkt. No. 151.)  The counterclaims are for breach of

contract, misappropriation of trade secrets, and tortious interference with prospective business

relationships, as well as a request for a declaration to quiet title.  The plaintiffs argue that (1) all

of the counterclaims are barred by the applicable statutes of limitations; (2) the misappropriation

and breach-of-contract counterclaims are precluded by a settlement agreement; and (3) all of the

counterclaims fail on the merits because they are unsupported by any evidence.  The defendants

oppose the motion, asserting that it is not yet ripe for decision because discovery has not closed,

that the counterclaims are saved by a Texas statute, and that they are supported by sufficient

evidence at this stage of the litigation to defeat the motion for summary judgment.  After

reviewing the parties' submissions and hearing argument from counsel, the Court DENIES the

motion.

I.      **Background**

The plaintiffs and the defendants are both in the business of creating software to facilitate comparison shopping on the Internet, in particular the online comparison and purchase of automobiles.  Each party sells its products and services to various automakers, which use those products to enable consumers to compare vehicles.  In 2008, one of the automakers, Chrysler Corporation, switched from the plaintiffs' products to the defendants'.  This lawsuit soon followed.

This is not the first time the plaintiffs and the defendants have found themselves at odds.  In 1997, the parties explored the possibility of collaborating and combining their products.  In order to facilitate their collaboration, the parties entered into a Confidentiality Agreement.  That agreement is central to the defendants' breach-of-contract counterclaim in this case.

The collaboration failed, and in 1999 the parties found themselves in litigation.  The defendants sued the plaintiffs in California state court, alleging tortious interference with contractual relations involving a company named IntelliChoice.  The plaintiffs responded by filing a patent infringement action in a federal court in Texas, alleging infringement of a patent not at issue here.  The patent action included several state law claims of interference with a license agreement and a prospective contract between the plaintiffs and IntelliChoice.  Those two cases settled in May 2001, when the parties entered into an agreement referred to as the "Settlement Agreement."  In the present litigation, the release contained in the Settlement Agreement serves as the basis for several of the plaintiffs' arguments in favor of partial summary judgment.

On January 14, 2000, during the pendency of the California and Texas lawsuits, the plaintiffs filed a provisional patent application that became the basis for two issued patents: U.S.

Patent No. 7,130,821 ("the '821 patent") and U.S. Patent No. 7,206,756 ("the '756 patent").  The former issued in 2006 and is entitled "Method and Apparatus for Product Comparisons."  The latter issued in 2007 and is entitled "System and Method for Facilitating Commercial Transactions Over a Data Network."  Both patents relate to performing product comparisons and purchasing products online, with particular focus on comparing, configuring, and ultimately purchasing automobiles.

On August 8, 2008, the plaintiffs filed the present complaint, alleging that the defendants had infringed the '821 and '756 patents.  In response, the defendants filed suit against the plaintiffs in Texas state court on August 12, 2009, claiming misappropriation of trade secrets and conversion, and seeking a declaration to quiet title against the defendants.  The defendants alleged that during the parties' brief period of collaboration, the plaintiffs had obtained confidential information from the defendants and passed it off it as the plaintiffs' own inventions before the Patent and Trademark Office ("PTO") in the application that culminated in the issuance of the '821 and'756 patents.  The plaintiffs then filed a second action, in the United States District Court for the Western District of Texas, seeking a declaration that they did not breach any confidentiality agreement they had with the defendants and that, in any event, the statute of limitations would bar any claim for breach of such an agreement.

The defendants filed their answer in this case on January 16, 2010.  On January 19, 2010, the plaintiffs moved to have the declaratory judgment action in the Western District of Texas dismissed without prejudice.  In the state court action, Versata filed a "plea to jurisdiction," arguing that the claims in that suit were dependent on the resolution of the questions in this case and that they should therefore be made a part of this case.  That action was dismissed on March 11, 2010.  On September 7, 2010, the defendants amended their counterclaims in this case to

include the previously asserted state law claims.  It is those state law counterclaims that the plaintiffs challenge in this motion.[1]

## II.      Discussion

### A.      *Statute of Limitations*

1.  The plaintiffs first allege that the defendants' claim of trade secret misappropriation is barred by the applicable three-year Texas statute of limitations because the claim accrued no later than November 2006, when the '821 patent issued.  The plaintiffs contend that the defendants either knew of or should have discovered the misappropriation no later than that date, which would make that counterclaim untimely.  The plaintiffs point to five circumstances that they contend should have put the defendants on notice of the potential counterclaim: (1) the defendants' persistent doubts about the security of the trade secrets they shared with the plaintiffs; (2) the competitive nature of the relationship between the plaintiffs and the defendants; (3) the fact that the defendants actually inspected the plaintiffs' technology that they claim incorporated the trade secrets; (4) the issuance of the '821 patent; and (5) the public availability of the allegedly misappropriated technology on a website.

Under Texas law, a claim for misappropriation of trade secrets is barred unless brought "not later than three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."  Tex. Civ. Prac. & Rem. Code § 16.010(a). In this case, however, the misappropriation is asserted as a counterclaim to the plaintiffs' patent infringement allegations.  In arguing that the misappropriation counterclaim is related to the

---

[1]     Although the counterclaims include a claim for conversion, the parties agree that it is no longer part of this case.  This Court therefore will not address that counterclaim.  Moreover, because the declaration to quiet title rises or falls with the other claims, the Court will not address that claim separately in this order.

patent infringement claims, the defendants contend that the '821 and '756 patents are invalid because the defendants' misappropriated trade secrets are at the heart of the disclosed inventions.

Based on that argument, the defendants contend that several provisions of Texas law save their counterclaim from the statute of limitations.  First, they rely on section 16.069(a) of the Texas Civil Practice and Remedies Code, which states:  "If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required."  See Pitts & Collard, L.L.P. v. Schechter, 2011 WL 6938515, at *16 (Tex. App. 2011) (explaining that section 16.069 was "intended to prevent a plaintiff from waiting until an adversary's valid claim arising from the same transaction was barred by limitations before asserting his own claim" (quoting Hobbs Trailers v. J.T. Arnett Grain Co., 560 S.W.2d 85, 88 (Tex. 1977))).  In addition, the defendants rely on section 16.068 of the Texas Civil Practice and Remedies Code, which permits a party to make certain amendments to timely filed pleadings without running afoul of the statute of limitations.

Texas law defines a counterclaim as a defendant's cause of action against a plaintiff that "if established will defeat or qualify a judgment to which the plaintiff is otherwise entitled." McBryde v. Curry, 914 S.W.2d 616, 620 (Tex. App. 1995); see Latham v. Allison, 560 S.W.2d 481, 485 (Tex. Civ. App. 1977).  In addition, Texas courts apply a "logical relationship test" to determine whether counterclaims arise "out of the same transaction or occurrence" as the principal claims and thus qualify for the benefits of either section 16.068 or section 16.069. Commint Technical Servs., Inc. v. Quickel, 314 S.W.3d 646, 653 (Tex. App. 2010); see also Wells v. Dotson, 261 S.W.3d 275, 281 (Tex. App. 2008) ("Under [the logical relationship] test, a transaction is flexible, comprehending a series of many occurrences logically related to one

another.").  That test is met "when the same facts, which may or may not be disputed, are significant and logically relevant to both claims."  Pitts & Collard, 2011 WL 6938515, at *16; see Commint Technical, 314 S.W.3d at 653.

The misappropriation counterclaim at issue in this case states a cause of action against the plaintiffs that, if found to have merit, could defeat the plaintiffs' infringement claims.  It arises out of the same transaction or occurrence—in this case, the grant of the patents-in-suit. Additionally, the same facts (e.g., the technology underlying the patents and the proper inventorship of that technology) are significant and highly relevant to both the claim of infringement and the misappropriation counterclaim.  See, e.g., Skytop Brewster Co. v. Skytop Int'l, Inc., 1993 WL 721287, at *3 (S.D. Tex. 1993) (cited with approval in Gen. Universal Sys., Inc. v. HAL, Inc., 500 F.3d 444, 452-53 (5th Cir. 2007)) (finding persuasive defendant's argument that "section 16.069 of the Texas Civil Practice and Remedies Code revives its trade secrets counterclaim regardless of the two year statute of limitations").  In light of section 16.069, the plaintiffs are therefore not entitled to summary judgment regarding the timeliness of the misappropriation counterclaim.

Even if section 16.069 does not save the misappropriation counterclaim, the plaintiffs have not shown that they are entitled to summary judgment as to the timeliness of that claim.  A party "moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense."  KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  The movant must "(1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the [non-movant] discovered, or in the exercise of reasonable diligence should have discovered

the nature of its injury." Id.   Thus, once a party discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another, the "limitations [period] commences, even if the [claimant] does not know the exact identity of the wrongdoer." Childs v. Haussecker, 974 S.W.2d 31, 40 (Tex. 1998); see also Exxon Corp. v. Emerald Oil & Gas Co., 348 S.W.3d 194, 207 (Tex. 2011) ("Once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." (internal quotation omitted)).

In this case, the plaintiffs have failed to show that there is no disputed issue of material fact as to when the defendants should have known of the misappropriation.  The plaintiffs have not shown that no reasonable jury could find that a reasonable person in the defendants' position would have investigated the allegations that the plaintiffs were misappropriating trade secrets. See, e.g., Pressure Sys. Int'l, Inc. v. Sw. Research Inst., 350 S.W.3d 212, 217 (Tex. App. 2011) (development of competing technology by former employee "not necessarily wrongful in and of itself").  The issuance of a patent may sometimes suffice to put the defendants on notice that it incorporates their misappropriated technology.  But here there are countervailing circumstances to consider.   Although the plaintiffs contend that the defendants were on notice of any misappropriation because they expressed concern that the plaintiffs would steal their trade secrets, the defendants reply that in response to their concerns the plaintiffs gave them assurances that their concerns were not well founded, and that those assurances relieved them of any duty to investigate further.  The plaintiffs have not put forth sufficient evidence to entitle them to summary judgment on the issue of whether the defendants' reliance on assurances given to them by the plaintiffs was so unreasonable that, as a matter of law, the defendants were under

a duty to inquire into the allegations of misappropriation.  See id. at 217-18; Childs, 974 S.W.2d at 45-46; see also Barker v. Eckman, 213 S.W.3d 306, 312 (Tex. 2006).  This Court cannot say that as a matter of law, a reasonable juror would have to conclude that the defendants were on notice of the misappropriation by November of 2006.  See Stark v. Advanced Magnetics, Inc., 29 F.3d 1570, 1577-78 (Fed. Cir. 1994) (observing that factors such as the existence of a relationship of trust between the parties or deliberate misrepresentation are pertinent to a determination of whether the issuance of a patent gave the defendants constructive notice of its content for purposes of statute of limitations).

2.   The plaintiffs make similar arguments as to why the counterclaim for breach of the 1997 Confidentiality Agreement should be barred by the applicable four-year Texas statute of limitations for contract breaches.  See Tex. Civ. Prac. & Rem. Code § 16.051.  However, for reasons similar to the ones set forth above, the Court rejects the plaintiffs' argument that the defendants' breach-of-contract counterclaim is barred by the statute of limitations as a matter of law.  The Confidentiality Agreement relates to the defendants' technology that they say formed the basis for the plaintiffs' patents, and the plaintiffs have failed to show the absence of a disputed issue of material fact as to whether that claim also subject to the savings provisions of the Texas Civil Practice and Remedies Code.

3.   The plaintiffs argue that the tortious interference counterclaim is barred by the applicable two-year Texas statute of limitations.  See Tex. Civ. Prac. & Rem. Code § 16.004. The defendants added the tortious interference counterclaim to their second amended answer, filed on September 7, 2010.  In that filing, they alleged that "[o]n or around June 25, 2008, during the bidding process, Versata's [CEO] Randy Jacops expressly told Chrysler's Ch[arles] Sullivan that the technology required to satisfy the requirements set forth in Chrysler's Request

for Proposal would require technology patented and owned by Versata, and thus any company seeking to replace Versata would need to hold a license to certain Versata patents. These statements were clear and blatant misrepresentations of fact. . . ."

Under Texas law, an amendment or supplement to a timely filed pleading is not barred by the statute of limitations "unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence." See Tex. Civ. Prac. & Rem. Code. § 16.068; see also Milestone Props., Inc. v. Federated Metals Corp., 867 S.W.2d 113, 116 (Tex. App. 1993) ("Since section 16.068 is a remedial statute, designed to protect litigants from loss of their claims by a plea of limitation in cases where that would otherwise occur, [it] should be liberally construed and applied to effect that purpose.").   The defendants assert that the tortious conduct alleged in the counterclaim is inextricably bound up with the validity of the plaintiffs' patents:  If those patents are valid, the tortious interference counterclaim fails because the CEO's statements would not have been misrepresentations; if the patents are invalid, the tort claim becomes meritorious.   Thus, the defendants argue that the tortious interference counterclaim and the patent validity dispute "share[] the same actors and the same underlying operative facts."  See Murthy v. Abbott Labs., No. 4:11-cv-105, 2011 WL 5416333, at *18 (S.D. Tex. 2011); see also Leonard v. Texaco, Inc., 422 S.W.2d 160, 163-64 (Tex. 1967) (interpreting identically worded predecessor statute).  The Court concludes that a reasonable finder of fact could find that the two sets of claims grew out of the same "transaction or occurrence," namely the termination of Chrysler's contract with the plaintiffs in favor of a contract with the defendants.  The plaintiffs are therefore not entitled to summary judgment on that issue.

There is also a question of fact as to whether the tortious interference counterclaim is timely under section 16.069 of the Texas Civil Practices and Remedies Code.  That is because

the plaintiffs in their complaint allege that the defendants tortiously interfered with the plaintiffs'

existing contract and prospective business relationships.  The alleged interference stemmed from

the defendants' actions in securing a contract with Chrysler.  The facts required to prove both the

plaintiffs' tortious interference claim and the defendants' tortious interference counterclaim

concern the events at Chrysler in the spring and summer of 2008 and would likely overlap to a

substantial degree.  When the facts underlying both parties' claims are "closely related" and

logically connected to one another, both the claim and the counterclaim are deemed to arise out

of the same transaction or occurrence, which renders the counterclaim timely.  See Wells, 261

S.W.3d at 281; see also Cmty. State Bank v. NSW Invs., L.L.C., 38 S.W.3d 256, 258 (Tex. App.

2001) (under the logical relationship test, "a transaction is flexible, comprehending a series of

many occurrences logically related to one another").

B.     *Release by Settlement Agreement*

The plaintiffs next argue that the trade secret misappropriation and breach-of-contract

counterclaims arose before the effective date of the 2001 settlement and are therefore released by

the Settlement Agreement or barred because they could have been asserted in that earlier round

of litigation.  The defendants counter that the current counterclaims are not covered by the

language of the Settlement Agreement because the release extends only to claims that related to

the subject matter of the earlier lawsuit or could have been asserted in that lawsuit, and does not

extend to the claims asserted here.  The Settlement Agreement states that each party

> do[es] hereby release and discharge [the opposing party] from any and all claims,
> causes of action, demands, liabilities, damages, . . . or losses of any kind or nature
> (hereafter "Claims") that arose on or before the Effective Date, whether known or
> unknown, and are based upon, arise out of or relate to: (i) the subject matter of the
> Lawsuit; or (ii) Claims asserted or which could have been asserted in the Lawsuit.

The claims at issue in the 1999 action relate to U.S. Patent No. 5,825,651 ("the '651 patent"). Consequently, the claims in this case cannot be said to be based upon, arise out of, or relate to the subject matter of that action.  The question whether the Settlement Agreement applies to the defendants' misappropriation and breach-of-contract counterclaims therefore turns on whether those claims could have been asserted in the 1999 lawsuit.  If so, the plaintiffs would be released from any liability for them at this time.  If not, the claims would survive.

The parties agree that Delaware law governs the interpretation of the Settlement Agreement.  Delaware law permits the use of general releases, which are "intended to cover everything—what the parties presently have in mind, as well as what they do not have in mind. . . .  In construing a release, the intent of the parties as to its scope and effect [is] controlling, and the court will attempt to ascertain their intent from the overall language of the document."  Corporate Prop. Assocs. 6 v. Hallwood Grp. Inc., 817 A.2d 777, 779 (Del. 2003) (internal citation omitted).  There are some limits to that broad proposition, however.  First, words of general application used in a release following a specific recital of the subject matter concerned "are not to be given their broadest significance but will be restricted to the particular matter referred to in the recital."  Adams v. Jankouskas, 452 A.2d 148, 156 (1982). Additionally, a general release in a settlement agreement does not bar all claims that could have been asserted at the time the settlement went into effect.  For instance, claims for fraud in the inducement of the release would not fall within the scope of even the broadest general release. E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage, 744 A.2d 457, 462 (Del. 1999) (noting that "[i]t is quite another thing, however, to conclude that a person is deemed to have released a claim of which he has no knowledge, when the ignorance of such a claim is attributable to fraudulent conduct by the released party").

In light of these principles, the Court finds that the plaintiffs have not shown that the counterclaims for misappropriation of trade secrets and breach of the Confidentiality Agreement are covered by the Settlement Agreement as a matter of law.  In the 1999 lawsuit, the plaintiffs alleged that the defendants had infringed the '651 patent and tortiously interfered with existing and prospective contractual relations.  That action did not involve the subsequent use of the defendants' technology or any issues regarding a breach of the Confidentiality Agreement.  As explained above, a factual question exists as to whether the defendants were on notice at the time of the Settlement Agreement of the facts giving rise to their claim that the plaintiffs had incorporated the defendants' technology into their patent applications.  Cf. Seven Instruments, LLC v. AD Capital, LLC, 32 A.3d 391, 398 (Del. Ch. 2011) (holding claims released where party was on notice of fraudulent expenses at the time it entered into the settlement agreement, "accepted that risk under the terms that were negotiated, and released its right to pursue that claim as part of the package of consideration exchanged by the parties").

The defendants contend that at the time of the Settlement Agreement, the plaintiffs gave them assurances that the defendants' technology would not be used to compete with the defendants and would not be passed on to third parties.  (Dkt. No. 151-19, Ex. 18, Notes of Conversation with C. Taylor, at 2).  If a finder of fact were to conclude that such assurances were given with the intent of inducing the defendants not to investigate the plaintiffs' actions, the finder of fact could reasonably conclude that the misappropriation and breach counterclaims are not barred by the release.  See DuPont, 744 A.2d at 462; see also Matsuura v. Alston & Bird, 166 F.3d 1006, 1010-12 & n.10 (9th Cir. 1999) (interpreting Delaware law).  The plaintiffs are therefore not entitled to summary judgment based on the Settlement Agreement.

C.       *Sufficiency of the Evidence*

The plaintiffs next assert that they are entitled to summary judgment because of the absence of evidence to support the defendants' counterclaims.  They argue that there is no evidence that they misappropriated the defendants' trade secrets (and thus no evidence of a breach of the Confidentiality Agreement), and that there is no evidence that they interfered with the defendants' prospective business relationships.   The defendants assert that they have proffered sufficient evidence as to those counterclaims to survive summary judgment.

The defendants point to evidence that as early as 1996 they had developed technology that permitted making comparisons between different vehicles.  (Dkt. No. 160-8, AutoQuote Pro Guide, at 2.)  That underlying technology, according to the defendants, was not widely known or available, as evidenced by the fact that the plaintiffs expended considerable effort to develop their own vehicle comparison process.  (Dkt. No. 160-13, IST POC Study Doc., at 1.)  Moreover, the defendants took several steps to safeguard their proprietary technology.  Besides insisting on the Confidentiality Agreement, the defendants instructed the plaintiffs that the materials that were disclosed at various meetings were to be considered confidential and not to be disclosed to any third party.  (Dkt. No. 160-19, Fax to C. Taylor.)

The extent to which the plaintiffs had developed their system independently of the defendants' technology is a key issue in both the main suit and the misappropriation counterclaim, and it is sharply disputed.  The defendants point to evidence such as a statement made by a representative of the plaintiffs after a 1997 meeting between the plaintiffs and the defendants, that the defendants have "already solved our problem of equivalent vehicle compare. They don't have the algorithm in place to automatically equip equivalent vehicles, but they've provided an incredibly solid foundation for doing so."  (Dkt. No. 160-17, Meeting Rpt. of A.

Stein. at 1.)   The defendants also point to the similarities between the '821 patent and their software that permitted the user to "automatically equip each vehicle using that vehicles correct ordering and configuration rules."   (Dkt. No. 160-8, AutoQuote Pro Guide, at 2; see also Dkt. No. 160-26, Sched. Spreadsheet, at 2 (observing that the defendants' software "will give good insights into how we want to deal with the standard vs. optional part issues").)

Although the plaintiffs assert that they sought only the automotive data provided by the defendants, as opposed to any comparison functions or algorithms, the parties dispute that issue, which goes to the nature of the collaboration between them.   In light of the conflicting evidence, the Court concludes that the plaintiffs are not entitled to summary judgment on the misappropriation counterclaim.

The defendants' breach-of-contract counterclaim, founded on the 1997 Confidentiality Agreement, asserts that the plaintiffs improperly used and disclosed confidential information that was covered by the Agreement.   The defendants argue that if the plaintiffs misappropriated their trade secrets, that misappropriation would violate the Agreement.   Because the Court finds that the defendants have put forth sufficient factual allegations to survive summary judgment on the misappropriation counterclaim, the Court likewise concludes that the defendants have put forth sufficient evidence to survive summary judgment on the breach-of-contract counterclaim.

As to the counterclaim for tortious interference with contractual relations, the defendants allege that the plaintiffs made fraudulent misrepresentations regarding the scope and validity of the plaintiffs' patents and that those misrepresentations resulted in the defendants' loss of several contracts.   The defendants further allege that the plaintiffs made those statements and threatened prospective customers with litigation with the intent to prevent the defendants from securing contracts with those customers.   In support of that contention, the defendants point to the

deposition testimony of a Chrysler employee who stated that the plaintiffs' CEO told him during a luncheon meeting that Versata had initiated litigation against companies that refused to award contracts to it, including its own customers. (Dkt. No. 160-38, Dep. of C. Sullivan). That conversation allegedly occurred immediately after Chrysler awarded its contract, previously held by the plaintiffs, to the defendants. The evidence regarding the content and truthfulness of the plaintiffs' representations to the defendants' prospective customer is sharply contested, but it is sufficient to survive the motion for summary judgment. See Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726 (Tex. 2001) (finding that "for example, a plaintiff may recover for tortious interference from a defendant who makes fraudulent statements about the plaintiff to a third person").

For the foregoing reasons, the plaintiffs' motion for partial summary judgment with respect to the defendants' state law counterclaims is DENIED in all respects.

SIGNED this 22d day of February, 2012.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE