**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., *f/k/a* | § | |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, INC., | § | |
| *f/k/a* TRILOGY DEVELOPMENT GROUP, | § | |
| INC. | § | |
| | § | CIVIL ACTION No. 2:08-cv-313-WCB |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| INTERNET BRANDS, INC., *f/k/a* | § | |
| CARSDIRECT.COM, INC., | § | |
| AUTODATA SOLUTIONS COMPANY, | § | |
| and AUTODATA SOLUTIONS, INC. | § | |
| | § | |
| Defendants. | § | |

## FINAL INSTRUCTIONS

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. Remember, though, that you are the judges of the facts. The legal term for what I'm now going to give you is the jury charge or the court's instructions. This has been a complex case, as you know, and the instructions I am about to give you will be somewhat long. They may also be a little difficult to follow at times, because the law that applies to the issues in this case is complex. But I have made copies of the instructions I am now giving that you can take back to the jury room with you to consult if you need to. So if you miss something as I'm reading, don't worry—someone else will probably pick up what you may miss, and you will always be able to check the written copy that I will give you. Because I will be giving you a copy of the instructions, I would advise you not to take notes as I talk and just listen.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. When they do, you should keep in mind that statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

I will begin by returning to the issue of the burden of proof, which I discussed with you a little bit at the outset of the case. The "preponderance of the evidence" standard applies to most of the issues in this case. That means that the party asserting a particular claim must persuade you that each fact necessary to that claim is more likely to be true than untrue. If the evidence fails to persuade you that any fact necessary to prove a particular claim has been proved by a preponderance of the evidence, you should find in favor of the other party on that claim.

There are some issues in this case to which a different burden of proof applies. You will recall that I mentioned at the outset that the law sometimes requires a party to prove a particular fact or claim by "clear and convincing evidence." That is a higher standard of proof than preponderance of the evidence. It means that you must be left with a clear conviction or belief that the fact in question has been proved. I will tell you which issues require clear and convincing evidence when we get to them. For now all you need to know is that for most of the issues in the case, the "preponderance of the evidence" standard applies, which means that you simply need to ask yourself, "am I persuaded that the party with the burden has shown that the fact in question is more likely true than not."

Part of your task as finders of the facts is to weigh the testimony of the witnesses. That is a task for which juries are very well suited. For example, if there is a conflict in testimony on a particular point, use your common sense in deciding which witness you find more believable. If there is a question as to the relative expertise of particular witnesses, use your common sense to

decide which witnesses you find more knowledgeable.  The fact that a person has testified as an expert does not mean that you must accept his opinions as true.  As with any other witness, it is up to you to decide whether you find that testimony convincing and choose to rely on it.  Certain testimony was presented to you through depositions.  A deposition is a recording of a witness's sworn answers to questions that were asked in advance of trial.  The deposition testimony that you have heard is entitled to the same consideration as other evidence in the case.

## I.  PATENT INFRINGEMENT

I'm going to start with Versata's claim that Autodata infringed its patent and Autodata's claim that Versata's patent is invalid.

Now what is patent infringement?  Once a patent is issued, the owner of the patent, if it is valid, has the right to exclude others from making, using, or selling the patented invention throughout the United States for a period of 20 years.   Infringement occurs when a person, without the patent owner's permission, makes, uses, sells, or offers for sale, something that is within the scope of what the patent covers.

Now how do we decide what the patent covers?  We do that by looking at the patent's claims.  The patent claims are the numbered paragraphs at the end of the patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

As you have heard, Versata says that Autodata infringes ten claims of the '821 patent through its various activities in connection with the Chrysler, Jeep, Dodge, Ram Truck, and AOL websites.  Versata groups those claims into three categories.  First, Versata says that Autodata directly infringes claims 10, 13, 14, 17, 18, 19, 20, 22, and 23 by manufacturing, testing, selling, delivering and importing the Chrysler, Jeep, Dodge, and Ram Truck web systems.  Second, Versata says that Autodata indirectly infringes claim 1 by engaging in those same activities.  Third, Versata says that Autodata indirectly infringes all ten claims, claims 1, 10, 13, 14, 17, 18, 19, 20, 22, and 23, through its activities in connection with the implementation of the AOL website.  I will explain about "direct infringement" and "indirect infringement" in a minute.

Although there are a lot of claims to review, you will notice that there is a lot of overlap among them, and that they fall into basically three families of claims.  First, there is claim 1, which is a claim to a method of comparing products where at least one is automatically generated.  Second, there is claim 10, which is to a computer system that includes a processor, a computer readable medium and computer code executable by the processor; otherwise, it is much the same as claim 1.  Claims 13, 14, 17, and 18 are in the claim 10 "family," as they are dependent claims from claim 10, and they each just add one extra feature.  Third, there is claim 19, which is to a computer program whose code causes a computer system to perform the method mentioned in claim 1.  So once you figure out the first claim, you have done most of the work needed to understand all the claims.

Many of the terms in the claims will be easy for you to understand.  For the most part, you can just give the words their ordinary meaning, even though the claim language uses abstract terms rather than concrete examples.  There are a few terms, however, that I will define for you, although I'm afraid my definitions also use some abstract terms.

The term "automatically generate" means to "require that the computer system generate the second product configuration in response to a request from the user and in accordance with comparison criteria provided by the user."

The terms "comparison criteria" and "criteria upon which to automatically generate" mean "the product-related information provided by the user that the computer system uses to generate the second product configuration and to facilitate comparisons between the first and second product configurations."

Some of the asserted claims use the word "comprising."  "Comprising" is a word used a lot in patents and not much in ordinary conversation.  It means "including" or "containing."  A claim that uses the word "comprising" or "comprises" is not limited to products having only the elements that are contained in the claim, but also covers processes that add additional elements.  For example, take a claim that covers a table.  If the claim refers to a table "comprising" a tabletop, legs, and glue, the claim will cover any table that contains those structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

A patent owner has the right to stop others from using the invention covered by the patent claims during the life of the patent.  If any person makes, uses, sells, or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

To determine whether there is infringement, you must compare the allegedly infringing product with the scope of the patent claims as I have defined them for you.

In order to infringe a patent claim, a product or process must include every element of the claim.  So, in determining whether Autodata infringes Versata's asserted claims, you must determine for the accused product or process whether that product or process, or the use of that

product or process, contains each and every element contained in a claim.  I'll refer to the separate paragraphs in each of the claims at issue in this case as "elements."  Sometimes in this case the parties have referred to the elements of the claims as "limitations."  That's a common patent law expression, but I'll avoid it in the interest of clarity.  A claim element is present if it exists in the accused product or process just as it is described in the claim language.

You must consider each of the asserted patent claims separately.  In the verdict form, you will be asked to enter a separate verdict for each of the claims asserted in the case.

I mentioned "direct" infringement and "indirect" infringement earlier.  Direct infringement refers to infringement in which a single party commits all the acts necessary to infringe.  In order to prove direct infringement, it is not necessary to show that the party who is accused of infringement intended to infringe or even knew that it was infringing.  As I mentioned earlier, Versata claims that Autodata directly infringes a number of claims of the '821 patent by making, testing, selling, delivering, and importing the infringing Chrysler, Jeep, Dodge, and Ram Truck web systems.

As I mentioned a moment ago, there is another form of infringement that is being asserted in this case, called indirect infringement.  Someone who induces someone else to infringe can be guilty of indirect infringement even if they themselves did not commit the infringing acts.  Versata claims that Autodata is liable for infringement by inducing the users of the Chrysler, Jeep, Dodge, and Ram Truck websites to infringe the '821 patent.  In addition, Versata alleges that Autodata induced AOL and AOL users to infringe the patent by participating in the design sessions for business requirements, usability, and technical implementation of the AOL website, and also by providing tools and data to AOL.

To prove that Autodata is liable for indirect infringement, Versata must prove by a preponderance of the evidence first, that Autodata took action intending to cause others, such as AOL, AOL users, or the users of the Chrysler, Jeep, Dodge, or Ram Truck websites, to infringe the '821 patent; second, that those users that Autodata induced to infringe actually infringed some claim of the patent; and third, that Autodata was aware of the '821 patent and knew that the others were infringing that patent, or at least that Autodata was aware of a high probability that the acts that it was inducing would infringe Versata's patent, but intentionally took steps to avoid learning about that patent.

## II.  PATENT INVALIDITY

Now let's turn to patent validity.  Autodata contends that all of the claims of the '821 patent that Versata is asserting are invalid.  Once a patent is issued, it is presumed to be valid. That means that the fact that a patent was issued to a particular person does not guarantee that the patent is valid, but once it issues, the law says that if a challenger wants to show that it is invalid, the challenger has to make that showing by clear and convincing evidence.   So patent invalidity is one of the issues in this case to which the clear and convincing evidence standard applies.  In deciding whether particular claims are invalid, you will interpret the claims in the same way that you have in deciding infringement.

### A.  ANTICIPATION

If an invention set forth in a patent claim is not new, we say that it was anticipated by the prior art.  An invention that is anticipated by the prior art is not entitled to patent protection.  If you find that Autodata has proved by clear and convincing evidence that any particular claims asserted against it are anticipated by prior art, then you must find that those claims are invalid. Now I'm going to talk a little bit more generally about what this term "prior art" means.   In

patent law, what came before, or what's already out there, so to speak, is often referred to as the "prior art."  So you might say that the telephone is prior art to the cell phone and the cell phone is prior art to the smart phone.  As a technical term in patent law, however, "prior art" is used to describe those things you are allowed to look at to see if a particular invention is really new.

For a patent claim to be anticipated by the prior art, every element of the claim in question must be present within a single item of prior art.  In deciding whether or not a single item of prior art anticipates a patent claim, you should consider those things that are expressly stated or present in the item of prior art and also those that are inherently present.  Something is inherent in an item of prior art if it is naturally found in the prior art.  A particular feature is not inherent, however, if it is not necessarily part of the prior art item but merely a possible feature of that item.

So what counts as prior art for this purpose?

 Autodata is relying on prior art that falls into three categories that are recognized by the patent laws.  Those categories are:

First, anything that was described in a printed publication anywhere in the world more than one year before the filing date of the application for the patent.  The filing date for the '821 patent, by the way, is January 14, 2000.

Second, anything that was in public use or on sale in the United States more than one year before the filing date of the application for the patent in the United States.

Third, anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

Let's talk about those categories in a little more detail.

### 1.  Printed Publication

Printed publications from anywhere in the world are prior art if the printed publications were published more than one year before the application for the patent was filed.  Autodata claims that the manual for its software program AutoQuote Pro qualifies as prior art under that test.

A document is a printed publication if it was reasonably accessible to that portion of the public that is most likely to use it.  It is not necessary that the publication be available to every member of the public.  Publications may include not only such things as books, periodicals, or newspapers, but also publications that are not as widely available to the public, such as trade catalogs, journal articles, or scholarly papers that are distributed or available to those working in the field of the invention.  A printed publication becomes prior art on the date that it becomes available to the public.

A printed publication anticipates a claim if it contains a description of the invention covered by the patent claims that would allow a person skilled in the field of the invention, after reading the printed publication, to make and use the invention using a reasonable amount of effort or experimentation.


### 2.  In Public Use or On Sale

Regardless of the date of the invention, if a product or process claimed in a patent was in public use or on sale in this country for more than one year before the filing date of the patent application, it is prior art to the patent claim and thus anticipates the patent claims.

Autodata contends that the subject matter of the asserted claims of the '821 patent was in public use more than one year before the filing date of the '821 patent.  In order for prior public use to anticipate patent claims, three requirements must be met:

First, the use must occur more than one year before the patent application was filed.  The date of invention for the patent claims is irrelevant to this category of prior art.

Second, the use may be by anyone, including the inventor or patent owner.  If the invention was in public use, it is not necessary that those who used it appreciated that they were using the invention at the time.

Third, the use must have been public in order for the subject matter to be prior art.

Like public use, the sale or offer for sale in the United States of a product may be prior art and thus anticipate a patent claim covering the product or a method of making the product if the product was sold or offered for sale more than one year before the patent application was filed.  The date that the subject matter of the patent claims was invented is irrelevant to this category of prior art.

In order for there to be an offer for sale, two requirements must be met.

First, the product must have been the subject of a commercial offer for sale.

Second, the product must have been developed to the point where there was reason to expect that it would work for its intended purpose.  The product may be the subject of a sale for these purposes even if it is not ready for commercial production, or has not been technically perfected.

Autodata contends that the products at issue with respect to this section are Versata's SC Vehicle Compare and Autodata's AutoQuote Pro software.

### 3.  Prior Knowledge or Use by Another in the United States

Knowledge or use in the United States of a patented invention can be prior art to the patent claims.  The knowledge or use will be prior art if it meets the following four requirements:

First, the knowledge or use must be by someone other than the inventor.  This is different from the previous two categories, where the printed publication, the public use or the sale could be by the inventor or anyone else.

Second, the knowledge or use must be before January 14, 2000.

Third, the knowledge or use must be in the United States.  Prior knowledge or use outside the United States cannot be relied upon to invalidate a patent claim.

Fourth, the knowledge or use must have been public.  Private or secret knowledge or use by someone other than the inventor is not prior art.

### B.  OBVIOUSNESS

Autodata contends that the asserted claims of the patent are invalid because the inventions were obvious.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed.  A claim does not need to be both anticipated and obvious in order to be invalid.

You have heard the term "a person of ordinary skill in the field or the art" a lot in this case.  That term gets used frequently in patent law, and it is particularly important in deciding whether an invention would have been obvious at the time it was invented.

A person of ordinary skill in the art is a hypothetical person of average education and training in the particular field but who is aware of all the relevant prior art.  To determine the level of ordinary skill in the art, you may look to factors such as the nature of the field of the

invention, the sophistication of the technology, and the typical educational level of people working actively in the field.  So, for example, if the invention is a way to generate additional energy in a nuclear power plant, the level of ordinary skill is likely to be higher than if the invention is a new way to fold cardboard boxes to make them stronger.

In determining whether the patent is invalid because of obviousness, you should consider the content of the prior art, identify the differences between the prior art and the claimed invention, determine the skill level of a person of ordinary skill in the field at the time of the invention, and take into account any objective indications that would help determine whether the invention would or would not have been obvious.  If, after consideration of all these factors, you find by clear and convincing evidence that the claim would have been obvious to a person of ordinary skill in the art at the time the invention was made, then you must find the claim invalid.

In determining whether the invention set forth in a particular claim would have been obvious to a person of ordinary skill in the field, you may consider whether there is anything that would have prompted such a person to combine the elements or concepts in the prior art as the invention does.  However, you should keep in mind that a patent claim that consists of several elements is not rendered obvious merely because each of those separate elements was known in the prior art.  To choose a really simple example, you could say that a piano is just a combination of wood, ivory, metal and wire, but that does not mean that inventing the piano would be obvious if you just started with a pile of wood, some wire, some pieces of ivory, and a few chunks of metal.

So if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, or the evidence shows that there was another reason to combine the

elements in the prior art, that evidence would make it more likely that the claim is obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art would have led one to avoid combining the known elements, that evidence would make it more likely that the claim on the combination of those elements is not obvious.

You should also consider what are referred to as objective indications tending to establish obviousness or non-obviousness.  Some of these objective indications include:

(1)  Whether the invention was commercially successful as a result of the merits of the invention as opposed to other reasons;

(2)  Whether the invention satisfied a long-felt need;

(3)  Whether others had tried and failed to make the invention;

(4)  Whether others came up with the same idea at roughly the same time;

(5)  Whether the invention achieved unexpected results;

(6)  Whether others in the field praised the invention;

(7)  Whether others sought or obtained licenses to the patent from the inventor;

(8)  Whether persons skilled in the art expressed surprise or disbelief regarding the invention; and

(9)  Whether the inventor proceeded contrary to accepted wisdom in the field.

The presence or absence of any of these objective indications may help you decide whether the invention was or was not obvious.


## III.  PATENT DAMAGES

If you determine that Versata has proved any of its patent infringement claims against Autodata and that the claims of the '821 patent that are infringed are not invalid, you must determine the damages to which Versata is entitled.  You should not interpret the fact that I am giving you instructions about damages as any indication that Versata should win on its patent infringement claim.  It is your task first to decide whether Autodata is liable for the claims asserted against it; only if you find Autodata liable on one or more of the patent infringement claims will you need to turn to the question of damages.

A patent owner whose patent is infringed is entitled to what is called a "reasonable royalty" as damages for the infringement.  A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.  A reasonable royalty is the royalty that would be reasonable for the infringer to pay and for the patent owner to accept for the use of a patent that they both know is valid and that the infringer wants to use.

You are to decide what a reasonable royalty would be, based on the circumstances as of the time just before Autodata began selling or using the infringing product or process.  You should assume that Autodata knew at that time such things as the level of sales and profits that it would make using the invention.  You should also assume that Versata was willing to grant Autodata a license to sell or use the patented invention and that Autodata was willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that Versata and Autodata would consider in setting the amount Autodata should pay if they were negotiating a license.  Here are some factors you may want to consider in determining a reasonable royalty:

(1) Whether the patent owner had an established royalty in licensing the invention to others; in the absence of such a licensing history, whether there were any royalty arrangements that were generally used and recognized in the particular industry at that time.

(2)  What royalties Autodata or others paid for licensing patents comparable to this patent.

(3)  Whether Versata had a policy of licensing or not licensing the patent.

(4)  Whether or not Versata and Autodata are competitors.

(5)  Whether being able to use the patented invention helps Autodata in making sales of other products or services.

(6)  The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

(7)  The advantages and benefits of using the patented invention over products or processes not claimed in the patent.

(8)  The extent of Autodata's use of the patented invention and the value of that use to Autodata.

(9)  Whether or not there is a percentage of the profit or selling price that is customarily paid in the particular business for the use of patented inventions comparable to the inventions claimed in the patent.

(10)  The portion of the profit that is due to the patented invention, as compared to the portion of the profit that is due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Autodata.

(11)  Expert opinions as to what would be a reasonable royalty.

(12)   Any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

## IV.  STATE LAW CLAIMS

We now move away from the patent infringement and validity issues to a different set of claims.  On these claims, Versata and Autodata have both asserted claims against one another.

### A.  MISAPPROPRIATION OF TRADE SECRETS

Autodata contends that Versata misappropriated two of Autodata's trade secrets—the ACE, or "Automatic Comparably Equipped" algorithm and what has been referred to as the Ford schema—and that Autodata has been harmed by that misappropriation.  Versata denies that it misappropriated Autodata's trade secrets.

To prevail on its claim for misappropriation of trade secrets, Autodata must prove by a preponderance of the evidence that

(1)  A trade secret existed;

(2)   Versata acquired the trade secret through either improper means or through a confidential relationship;

(3)  Versata used the trade secret without authorization from Autodata; and

(4)  The use injured Autodata.

A trade secret consists of any formula, pattern, device, or compilation of information that is used in a business and that gives the business an opportunity to obtain an advantage over competitors who do not know or use it.  Matters of general knowledge in an industry are not trade secrets.

16

In order for confidential information to qualify as a trade secret, the owner of the confidential information must take reasonable precautions to protect it.  An agreement between the parties characterizing information as a trade secret is not conclusive as to its status, but it may be evidence of the value or secrecy of the information.

There is no precise definition or formula for determining whether any of the items claimed by Autodata actually constituted a trade secret.  Instead, you must make that determination in light of all the surrounding circumstances.  The following factors may be relevant to determining the existence of a trade secret, although these are not the only factors that may be relevant and you are to weigh them in the context of the surrounding circumstances:

(1)  The extent to which the information is known outside of Autodata's business;

(2)  The extent to which employees and others involved in Autodata's business knew the information;

(3)  Measures taken by Autodata to guard the secrecy of the information;

(4)  The value of the information to Autodata and its competitors;

(5)  The amount of effort or money expended by Autodata in developing the information; and

(6)  The ease or difficulty with which the information could be properly acquired or duplicated by others.

If you find by a preponderance of the evidence that Versata misappropriated Autodata's trade secrets, you will be asked to determine how much of Versata's profits, if any, resulted from that misappropriation.  Autodata is not entitled to all of Versata's income from its relevant contracts with Toyota, but only the net profits resulting from the acts of trade secret misappropriation.

### B.  BREACH OF CONTRACT

Both Versata and Autodata allege that the other party breached its contractual obligations.  Versata alleges that Autodata breached the 2001 Settlement Agreement by discussing the terms of that agreement with Chrysler and telling Chrysler that it had a license to patents not covered by the agreement.  Autodata alleges that Versata breached the 1997 Confidentiality Agreement and the 1998 Master Services Agreement by using Autodata's technology or disclosing it to the U.S. Patent Office and the public.

To recover damages for breach of contract, a party must prove by a preponderance of the evidence that the other party failed to comply with their agreement and that the failure to comply with the agreement resulted in harm to the non-breaching party.  That means that Versata has to prove that Autodata breached the Settlement Agreement and that the breach caused harm to Versata.  Similarly, Autodata has to prove that Versata breached the Confidentiality Agreement or the Master Services Agreement and that the breach caused harm to Autodata.

If you find that either Versata or Autodata (or both) breached their contractual obligations to the other party, you must assess what sum of money, if any, would fairly compensate the injured party for the injury it has suffered.  If you find that a party has proved that it suffered actual damages, it may recover its lost profits.  To recover damages for lost profits, the injured party must prove that it is reasonably certain it would have earned profits but for the breach and that the lost profits were a natural, probable, and foreseeable consequence of the breach.  If you find that the injured party failed to present adequate proof of actual damages, you may award that party nominal damages in the amount of one dollar if that party has proved that a contract was formed and breached.

To decide the amount of the damages for lost profits, you must determine the gross, or total, amount the injured party would have received but for the breach and then subtract from that amount the expenses the injured party would have had if the breach had not occurred. Damages need not be established with mathematical precision, but you must have a reasonable basis for your calculation.

## C.    TORTIOUS INTEREFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP

Versata makes a claim that is known as tortious interference with prospective business relationships.  Versata's claim is that Autodata interfered with Versata's effort to win a contract with Chrysler in 2008 by claiming that Autodata had a license to patented Versata technologies.

To prevail on this claim, Versata must prove by a preponderance of the evidence that (1) there was a reasonable probability that it would have entered into a contractual or business relationship with Chrysler; (2) Autodata committed a legally wrongful act that was a substantial factor in preventing the contractual or business relationship from occurring; (3) Autodata acted with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of their conduct; and (4) Versata suffered actual harm or damage as a result of the interference.

Autodata asserts the affirmative defense of legal justification.  Legal justification is a complete defense to a tortious interference claim.  To find that Autodata was legally justified in tortiously interfering with Versata's prospective contracts with Chrysler, you must find that Autodata had a good faith belief that it was legally entitled to act as it did.

### E.  TORTIOUS INTERFERENCE DAMAGES

#### 1.  Actual Damages

If you find that Autodata interfered with Versata's prospective business relations with Chrysler, you will be asked what sum of money would reasonably compensate Versata for its damages, if any, caused by the interference.

#### 2.  Exemplary Damages

There is another type of damages, known as exemplary damages, that can be awarded in exceptional cases involving tortious interference with prospective contractual relations. Exemplary damages means an amount that you may in your discretion award as a penalty or by way of punishing the wrongdoer.

Versata is entitled to exemplary damages if it proves by clear and convincing evidence that the harm it suffered resulted from Autodata's fraud, malice, or gross negligence.

Proof of fraud requires proof that the offending party made a material misrepresentation, that the misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, that the misrepresentation was made with the intention that it should be acted on by the other party, and that the other party relied on the misrepresentation and thereby suffered injury.

Proof of malice requires proof that the offending party acted with the purpose of causing substantial injury to the other party.

Proof of gross negligence requires proof of an act or omission by the offending party that involved an extreme degree of risk, considering the probability and magnitude of the potential

harm to others, and of which the offending party was aware but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

In deciding whether to award exemplary damages, you may consider the following:

(1)  The nature of the wrong;

(2)  The character of the conduct involved;

(3)  The degree of culpability of the offending party;

(4)  The situation and sensibilities of the parties concerned;

(5)  The extent to which such conduct offends a public sense of justice and propriety; and

(6)  The net worth of the offending party.

\* \* \*

That is the end of my legal charge to you.  You will now hear arguments from the lawyers for each side, one hour to each side.  When they finish I will give you a very short additional charge and you will then retire to deliberate.


## V.  DELIBERATIONS (To be given after closing arguments)

When you retire to the jury room to deliberate on your verdict, you may take this charge with you.  The first thing you should do is to select a Foreperson, who will be responsible for communicating with the Court and the Courtroom Deputy as needed.  You should then begin your deliberations.

Your verdict on each issue must be unanimous.  There will be a verdict form in the jury room waiting for you when you retire for deliberations.  When you have reached a unanimous verdict as to each question on the verdict form, the Foreperson is to fill in the answers on the verdict form.  Make sure that you read the questions carefully, as some of them may not require

answers depending on how you have answered other questions.  Do not reveal your answers to any of the questions until you are discharged.  Also, you should not reveal your numerical division on any issue during the course of your deliberations, even to me or to the Courtroom Deputy.

I expect that when you get into the jury room to begin deliberations you may feel a little overwhelmed.  This has been a complicated case and there is a lot of evidence and argument to think about.  But I think you will be pleasantly surprised that as you start working methodically through the case, things will begin to seem more manageable.  I hope and expect you will listen to one another's views, even if you initially disagree on some things.  Discussing the issues from different perspectives can often help you formulate your ideas about how particular issues should be decided.

If you want to communicate with me at any time, please give a written message or question to the Courtroom Deputy, who will bring it to me.  You probably will not get a reply right away, as I will ordinarily have to summon the lawyers and get their input before responding to your questions.  But if you do have a question that is hanging you up, you are entitled to ask.  I will tell you now, however, that once the case is submitted to you, we will not be able to take additional evidence or testimony, and in most instances we will just have to tell you to rely on your recollection of the evidence.  I think you will find that in most instances, if you put your heads together, you will recall the evidence that you need to get you over the problem.  That is one of the reasons there is a group of you; eight memories are better than one.  And finally, trust your common sense throughout.  As I have mentioned, the founding fathers of this country had great confidence in the sound common sense of an American jury.  They had confidence in you

to do your job diligently and well.  These parties have confidence in you.  And so do I.  You may now retire for your deliberations.