IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VERSATA SOFTWARE, INC., *f/k/a* TRILOGY SOFTWARE, INC.; and VERSATA DEVELOPMENT GROUP, INC., *f/k/a* TRILOGY DEVELOPMENT GROUP, INC. <br><br> Plaintiffs, <br><br> v. <br><br> INTERNET BRANDS, INC., *f/k/a* CARSDIRECT.COM, INC., AUTODATA SOLUTIONS COMPANY, and AUTODATA SOLUTIONS, INC. <br><br> Defendants. | § § § § § § § § § § § § § § § § § § CIVIL ACTION No. 2:08-cv-313-WCB |

**MEMORANDUM OPINION AND ORDER**

After a week-long trial, a jury sitting in this case found in favor of the defendants on their claims of trade secret misappropriation and breach of contract. The defendants now seek declaratory and injunctive relief from this Court. See Defs.' Motion Requesting Judgment on Requests for Declaratory Judgment and Injunctive Relief (Dkt. No. 328) [hereinafter "Defs.' Motion"]. For the reasons detailed below, the defendants' request is DENIED.

**I.   Background**

The plaintiffs (collectively "Versata") and the defendants (collectively "Autodata") both provide website and software services to automobile manufacturers. In the late 1990s, the parties briefly collaborated on a project. As part of that collaboration, the parties were privy to one another's technological developments, some of which were regarded as trade secrets by their respective owners. Before beginning any discussions, the parties entered into a Confidentiality

1

Agreement in 1997 in order to safeguard their intellectual property rights; they subsequently entered into a Master Services Agreement ("MSA") in 1998 relating to various aspects of their collaboration. Those agreements provided that information exchanged by the parties that was identified as confidential and proprietary would be maintained in confidence, to be used only in ways authorized by the agreements and for no other purpose.

In a counterclaim filed in this litigation, Autodata asserted that Versata misappropriated some of Autodata's trade secrets and other confidential information and used those trade secrets in projects involving Toyota Motor Corporation. The jury agreed with Autodata, finding that Autodata established that it possessed trade secrets and that Versata misappropriated those trade secrets in the "applications and components" it provided to Toyota in 1998. See Special Verdict Form 8-9. Autodata also alleged that Versata breached the two agreements by disclosing those trade secrets to third parties. The jury agreed, finding that Versata failed to comply with the confidentiality provisions of one (or both) of the agreements. Id. at 10.

Autodata now seeks injunctive relief as a remedy for what it characterizes as the "irreparable harm caused by Versata's breach" of one or both of the agreements and for the misappropriation of Autodata's trade secrets. More specifically, Autodata seeks to enjoin Versata from "any further breach of the confidentiality provisions of the 1997 Confidentiality Agreement or the 1998 Master Services Agreement, from using or disclosing Autodata's ACE algorithm, and from using and disclosing the Ford Schema" (the two technologies that Autodata asserts were misappropriated). See Defs.' Motion, Attachment 3, Order on Defs.' Motion Requesting Permanent Injunction.[1]

---

[1] Autodata also requests declaratory relief in the form of a declaration from this Court that a license that Versata granted to Autodata is still valid. The license was granted as a result of an earlier settlement agreement between the parties. Upon the commencement of the present suit,

## II.     Discussion

A party seeking a permanent injunction must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006); see ITT Educ. Servs., Inc. v. Arce, 533 F.3d 342, 347 (5th Cir. 2008).  The decision to grant or deny a permanent injunction "is an act of equitable discretion by the district court." eBay, 547 U.S. at 391 (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 320 (1982)).

In its motion, Autodata does not attempt to fit its reasons as to why an injunction should issue into the traditional four-factor framework.[2]  Instead, it makes three other arguments why this Court should enjoin Versata.  First, Autodata argues that injunctive relief is appropriate when a party's continued possession of materials will cause a continuing harm.  Second, Autodata argues that the jury's finding that Versata misappropriated Autodata's trade secrets and breached its contractual obligations requires this Court to act to prevent any further misuse by Versata of the trade secrets and any further breach of the contracts.  Third, Autodata argues that the contractual agreements between the parties contemplated that any breach would constitute

---

Versata attempted to revoke and terminate Autodata's license because it alleged that Autodata had violated the terms of the agreement.  Because the jury found that Autodata did not violate the agreement, see Special Verdict Form 4, Versata now "acknowledges that the revocation is no longer valid." See Pls.' Resp. to Defs.' Mt. Requesting Judgment on Request for Injunctive Relief at 1 n.1 (Dkt. No. 335).  Autodata's request for declaratory relief is therefore moot and is denied on that ground.

[2]     Autodata's reply tracks the four-factor framework more closely. See Defs.' Reply Brief on Requests for Declaratory Judgment and Injunctive Relief (Dkt. No. 339).

irreparable harm to the non-breaching party and that by virtue of entering into those contracts the breaching party has in effect consented to the entry of an injunction upon a finding of breach.

Autodata's first argument can be roughly characterized as a claim that it has suffered an irreparable injury for which its remedies at law are inadequate. The Court rejects that argument. The Court finds that Autodata has not demonstrated that it is at risk of suffering irreparable harm for which it would have no adequate remedy at law. To the extent that Versata misappropriated Autodata's trade secrets in 1998 and used them "in applications and components provided to Toyota," the jury has found that two million dollars is sufficient to compensate Autodata for that misappropriation. See Special Verdict Form 9.

Aside from the disclosure to Toyota, Autodata has not pointed to any other continuing injury from the misappropriation, let alone an irreparable injury for which there would be no remedy at law.[3] First, Versata employees have testified that they deleted all Autodata data from the various projects at Versata. See Trial Tr. (July 15, AM session) 78-79 (Seth Krauss testifying that "if anything potentially could have even been linked to the AutoData, we deleted it"); id. at 84 (stating that an entity at Versata used Autodata data for a period of time "until they were told they had to cease using it"). Autodata does not offer any evidence that Versata is currently using any of Autodata's misappropriated trade secrets or is likely to do so in the future. Autodata contends that it "currently has no means from stopping Versata from delivering SC Vehicle Compare based on Autodata's confidential trade secrets to another customer in the

---

[3] Autodata has at times claimed that in addition to using the trade secrets in connection with Versata's work for Toyota, Versata misappropriated Autodata's trade secrets by disclosing them to the U.S. Patent & Trademark Office by incorporating them into a patent application filed with that office. Assuming, for the sake of argument, that such misappropriation occurred—a point on which the jury made no findings—this Court fails to see how injunctive relief would be appropriate with respect to that completed transaction.

4

future." See Defs.' Reply Brief of Requests for Declaratory Judgment and Injunctive Relief at 2 (Dkt. No. 339). But such speculation about Versata's future customers and plans does not constitute a sufficient showing of irreparable injury with no adequate remedies when Autodata has made pointed to any evidence suggesting that Versata is continuing to use its trade secrets. An injunction cannot issue solely upon a mere showing of past trade secret misappropriation.

With respect to the third and fourth factors bearing on the decision whether to issue injunctive relief, the Court finds both to be neutral. Autodata has not pointed to anything that would tip the balance of hardships in its favor and call for the Court to enter an injunction. Both Autodata and Versata are sophisticated operators in the automotive software industry, with established clients and existing products, and it is unclear how the trade secrets that were at issue in this case affect either business on an ongoing basis. Given the rapid pace of technological advancement in the software industry, it seems highly unlikely that the technology underlying the trade secrets at issue in this case is still viable or valuable today, some fourteen years after the misappropriation. In any event, Autodata has not made any such showing.

As to the fourth factor, the Court concludes that the public interest has little or no bearing on the question whether to enter or deny an injunction. There has been no suggestion that the grant or denial of injunctive relief would have any impact on the public at large.

Autodata argues that this Court must act to prevent any further use or disclosure of Autodata's trade secrets and any further breach of the confidentiality provisions of the contracts between the parties. But this entreaty amounts to little more than a request for the Court to enter an injunction directing the offending party to "obey the law." There is a well-established principle that a "general injunction which in essence orders a defendant to obey the law is not permitted," Meyer v. Brown & Root Const. Co., 661 F.2d 369, 373 (5th Cir. 1981), and this

Court will not enter such an injunction. See Swift & Co. v. United States, 196 U.S. 375, 402 (1905) (noting that it is the Court's duty to avoid "a sweeping injunction to obey the law"); United States v. Corn, 836 F.2d 889, 893 (5th Cir. 1988) (explaining that "an injunction ordering a party to 'obey the law' might well fail as overbroad"); see also Aspex Eyewear, Inc. v. Marchon Eyewear, Inc., 672 F.3d 1335, 1344 (Fed. Cir. 2012).

Autodata's final argument is that Versata consented to the entry of an injunction when it entered into the 1997 and 1998 agreements that contemplated the availability of equitable relief in the case of a breach of the agreements. It is true that the MSA recited that any breach of that agreement would be regarded as constituting irreparable harm. The Court, however, does not regard the parties' characterization of the consequences of a breach in an agreement entered into fourteen years ago to dictate the manner in which the Court must exercise its equitable authority. The parties cannot invoke the equity powers of this Court by consent. See eBay, 547 U.S. at 394 ("[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity . . . ."); Tenn. Valley Auth. v. Hill, 437 U.S. 153, 193 (1978) ("[A] federal judge sitting as a chancellor is not mechanically obligated to grant an injunction for every violation of law.").[4] While the parties may have contemplated that injunctive relief would be an appropriate remedy in the event of breach, that does not by itself require the Court automatically to enter such an order without reference to the traditional standards for the exercise of the Court's equitable powers. See Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946); Hecht

---

[4] Versata argues that Autodata has never properly pleaded a claim for injunctive relief and should be precluded from adding such a claim at this late stage in the litigation. In light of the disposition of Autodata's request on the merits, this Court does not reach the question whether Autodata preserved its right to seek injunctive relief.

Co. v. Bowles, 321 U.S. 321, 329 (1944). While the fact that the parties have consented to the entry of an injunction is a relevant factor for the court to consider, see Belgium v. United States, 452 F.3d 1289, 1297 (Fed. Cir. 2006), the Federal Circuit has held that the parties' consent cannot establish a right to an injunction if the equitable considerations do not otherwise dictate that an injunction should be entered, see SKF USA, Inc. v. United States, 512 F.3d 1326, 1332 (Fed. Cir. 2008). That proposition has been widely embraced by other courts as well. Dominion Video Satellite, Inc. v. EchoStar Satellite Corp., 356 F.3d 1256, 1266 (10th Cir. 2004); Smith, Bucklin & Assocs., Inc. v. Sonntag, 83 F.3d 476, 481 (D.C. Cir. 1996); Baker's Aid v. Hussmann Foodservice Co., 830 F.2d 13, 16 (2d Cir. 1987); Laidlaw, Inc. v. Student Transp. of Am., Inc., 20 F. Supp. 2d 727, 766 (D.N.J. 1998); Dice v. Clinicorp, Inc., 887 F. Supp. 803, 810 (W.D. Pa. 1995); Firemen's Ins. Co. of Newark v. Keating, 753 F. Supp. 1146, 1154 (S.D.N.Y. 1990).

Because the equitable factors that the Court is required to consider do not favor entering an injunction against Versata, this Court declines Autodata's invitation to exercise its equitable powers to grant relief in addition to the relief granted by the jury's verdict in this case. Accordingly, Autodata's motion is DENIED.

It is so ORDERED.

SIGNED this 30th day of July, 2012.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE